MIRANDA & BOYAKI
Walter L. Boyaki (Tx Bar No. 02759500)
Wboyaki@aol.com
4621 Pershing Drive
El Paso, Texas  79903
Tel.:  (915) 566-8688
Fax :  (915) 566-5906

Albert W. Morris
1025 Cynthia Avenue
Pasadena, California 91107

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HANS ROSENFELD, individually, | )( | |
| HANS ROSENFELD, d/b/a TOOLS | )( | CASE NO. CV07-7040-AHM (FFMx) |
| THEATER INVESTMENT CO., and | )( | |
| TOOLS THEATER INVESTMENT | )( | |
| CORPORATION, | )( | |
| | )( | |
| Plaintiffs, | )( | **PLAINTIFFS' FIRST AMENDED** |
| | )( | **COMPLAINT** |
| v. | )( | |
| | )( | JUDGE: A. HOWARD MATZ |
| TWENTIETH CENTURY FOX FILM | )( | DEPT: 14 |
| CORPORATION, TWENTIETH | )( | |
| CENTURY FOX ANIMATION, | )( | |
| TWENTIETH CENTURY FOX HOME | )( | |
| ENTERTAINMENT LLC, | )( | |
| BLUE SKY STUDIOS, and | )( | |
| SOUNDELUX SHOWORKS, INC., | )( | |
| | )( | |
| Defendants. | )( | |

Plaintiffs, HANS ROSENFELD (ROSENFELD), individually, HANS ROSENFELD

d/b/a TOOLS THEATER INVESTMENT CO. and TOOLS THEATER INVESTMENT

CORPORATION (TOOLS THEATER) (collectively, Plaintiffs), file this original complaint

against the Defendants, TWENTIETH CENTURY FOX FILM CORPORATION,

TWENTIETH CENTURY FOX ANIMATION, TWENTIETH CENTURY FOX HOME

ENTERTAINMENT LLC, (collectively, TWENTIETH CENTURY), BLUE SKY STUDIOS

(hereinafter, BLUE SKY) and SOUNDELUX SHOWORKS, INC. (hereinafter

SOUNDELUX) (collectively, Defendants), and respectfully show:

## I. BASIS FOR SUIT

1.      This action arises, in part, under the copyright laws of the United States, 17 U.S.C.A.

§10l et. seq., Lanham Trademark Act of 1946 (15 U.S.C. §1051, et. seq.), and the

Declaratory Judgments Act, 28 U.S.C.A. § 2001, et. seq., seeking a declaration that Plaintiff

HANS ROSENFELD owns all interest in his copyright, his Tools Theater Investment

Corporation, his TOOLS trademark, and his work "Tools Theater" and that the Defendants

have no such rights, works or intellectual property. There is also an action under Texas law for

misappropriation/theft of confidential information, tortious interference with existing or

prospective business relationship and contracts, unfair competition, deceptive trade practices,

fraud and related civil conspiracy and common law trade mark infringement.

## II. JURISDICTION AND VENUE

2.      This court has jurisdiction of this action pursuant to 15 U. S. C. §1121 (actions arising

under the Federal Trademark Act); 28 U.S.C.A. § 1331 (Federal Question); 28 U.S.C.A. §

1332 (Diversity of Citizenship); 28 U.S.C.A. §1338(a) (Acts of Congress relating to

trademarks and copyrights) and 1338(b)(pendant jurisdiction over unfair competition claims).

Venue is proper as confirmed by 28 U.S.C.A. § 1400(a) and 28 U.S.C.A. §1391. Acts giving

rise to the causes of action alleged herein have occurred and are occurring in this district.

## III. PARTIES (PLAINTIFFS)

3.      Plaintiff HANS ROSENFELD is an author, a citizen of the Republic of Mexico and a

resident of El Paso County, Texas.

4.     From 1996 to December 8, 2000, Plaintiff HANS ROSENFELD did business as

TOOLS THEATER INVESTMENT CO.  Plaintiff TOOLS THEATER INVESTMENT

 CORPORATION is a corporation organized and existing under the laws of the State of Texas

with its principle place of business in El Paso, Texas.

## IV. PARTIES (DEFENDANTS)

5.     Defendant TWENTIETH CENTURY FOX FILM CORPORATION is and at all

times mentioned in this complaint was a corporation organized and existing under the laws of

the State of Delaware with its principle place of business in Los Angeles, California and may

be served with process through its registered agent, Gary D. Roberts, 10201 W. Pico Blvd.,

Los Angeles, California 90035.

6.     On information and belief, Defendant TWENTIETH CENTURY FOX

ANIMATION is and at all times mentioned in this complaint was a corporation organized and

existing under the laws of the State of Delaware with its principle place of business in Los

Angeles, California and may be served with process through its registered agent, Gary D.

Roberts, 10201 W. Pico Blvd., Los Angeles, California 90035.

7.     Defendant TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC, is

and at all times mentioned in this complaint was a corporation organized and existing under the

laws of the State of Delaware with its principle place of business at 10201 W. Pico Blvd., Los

Angeles, California 90035 and may be served with process through its registered agent, Gary

D. Roberts, 10201 W. Pico Blvd., Los Angeles, California 90035.

8.     Defendant BLUE SKY STUDIOS is and at all times mentioned in this complaint

was a corporation organized and existing under the laws of the State of Delaware with its

principle place of business at 10201 W. Pico Blvd., Los Angeles, California 90035 and may be

served with process through its registered agent, Gary D. Roberts, 10201 W. Pico Blvd., Los Angeles, California 90035.

9.      Defendant SOUNDELUX SHOWORKS, INC. is and at all times mentioned in this complaint was a corporation organized and existing under the laws of the State of California with its principle place of business at 7080 Hollywood Blvd., Suite 1100, Hollywood, California, 90028 and may be served with process through its registered agent, Orrin M. Halper, 7080 Hollywood Blvd., Suite 1100, Hollywood, California, 90028.

10.     The above-named defendants shall be globally referred to hereafter as the TWENTIETH CENTURY FOX, BLUE SKY and SOUNDELUX.

## V.  BACKGROUND

11.     In 1988, Plaintiff, HANS ROSENFELD, began researching and writing a literary work entitled TOOLS (hereinafter referred to as "the Original Work") in furtherance of his vision to create a live show production about robots and their interaction with humans in modern society.  Plaintiffs completed this literary work and registered the copyright with the government of Mexico on November 3, 1995.  The Mexican certificate of copyright registration is attached as Exhibit "A" and incorporated by reference.  Plaintiff HANS ROSENFELD owns all right, title and interest in and to the Original Work.

12.     At the time of receipt of the Mexican Copyright Registration, Plaintiffs had the Spanish language version of the literary work translated into English by an official certified translator.  Plaintiff HANS ROSENFELD owns all right, title and interest in and to the English Version of the Work.  (The English Version of the Work and the Original Work are sometimes collectively referred to herein as "the TOOLS literary work").

13.     On March 5, 2007, Plaintiff HANS ROSENFELD obtained copyright registration of the English Version of the Work with the U.S. Copyright Office as U.S. Copyright Registration No. TXu1-348-392.  A true and correct copy of this copyright certificate of registration as well as a true and correct copy of the underlying copyrighted work made the subject of this registration is attached as the following Exhibit:

EX. B-14:     U.S. Copyright Registration No. TXu1-348-392, registered March 5, 2007.
              Form TX:  "TOOLS".

Plaintiffs own all right, title and interest in and to this copyrighted work.

14.     In 1996, shortly after obtaining the Translated Work, Plaintiff HANS ROSENFELD formed a company called Tools Theater Investment Co. (also a Plaintiff herein) which he used as a d/b/a.

15.     Plaintiff HANS ROSENFELD thereafter embarked on a course of action to raise financial capital (seed money) to develop the concepts contained in the Original and Translated Work.  The concepts were developed further and presented to significant investors with the intent to produce and market the TOOLS literary work in a number of different formats, including, animation, live show productions, puppets, film, story books, computer games, and associated general merchandising.

16.     From 1996 to present, Plaintiffs have invested approximately $500,000.00 to develop the concepts in the TOOLS literary work, as well as, devoting virtually all of HANS ROSENFELD's time to this project.  As part of the project, a marketing strategy and business plan was developed, and some initial work-in-progress conceptual art renderings were created for Plaintiffs in collaboration with some local El Paso, Texas artists as work made for hire ("the El Paso local artwork").  Plaintiffs own all right title and interest in and to the El Paso local artwork.  Hans Rosenfeld also collaborated with another artist to create what he calls the

TOOLS Master Show Rendering. On March 5, 2007, Plaintiffs received a copyright registration for this master show rendering from the U.S. Copyright Office.  A true and correct copy of the copyright certificate of registration as well as a true and correct copy of the underlying copyrighted work is attached as the following Exhibit:

EX. B-5:      U.S. Copyright Registration No. VAu737-119, registered March 5, 2007. Form VA: "TOOLS Master Show Rendering (3-Panels – Left, Center, Right)"

Plaintiffs own all right, title and interest in and to these copyrighted works.

17.     As a next step, HANS ROSENFELD sought out top-of-the-line production companies with expertise in the children's entertainment area.  As a result, Plaintiffs engaged the services of a top flight production company called ANIMAX DESIGNS, INC. (Nashville, TN)(ANIMAX) to work on and collaborate in character and scenery development for a show production of the TOOLS literary work.  Such character and scenery development included the creation of artwork, such as, robot characters, scenery, and brainstorming story boards based on the TOOLS literary work.  This artwork, created as work made for hire, and at significant expense to Plaintiffs, was brought to a more developed stage so that the Plaintiffs could use the artwork in presentations for seeking significant financial investment in furtherance of Plaintiffs' business plan (the ANIMAX work).  Plaintiffs own all right title and interest in and to the ANIMAX work.  On March 5, 2007, the Plaintiffs received certificates of registration for these copyrighted works from the U.S. Copyright Office. True and correct copies of these copyright certificates of registration as well as true and correct copies of the underlying copyrighted works are attached as the following Exhibits:

EX. B-1:      U.S. Copyright Registration No. TXu1-344-032, registered March 5, 2007. Form TX:  "Humanoids – Character & Costume Design";

EX. B-3:      U.S. Copyright Registration No. TXu1-343-049, registered March 5, 2007. Form TX:  "Borrington Stressky Burntjou Monnee";

EX. B-4:    U.S. Copyright Registration No. VAu737-117, registered March 5, 2007. Form VA: "TOOLS # 1";

EX. B-6:    U.S. Copyright Registration No. VAu737-120, registered March 5, 2007. Form VA: "TOOLS # 3";

EX. B-7:    U.S. Copyright Registration No. VAu737-121, registered March 5, 2007. Form VA: "TOOLS # 4 (Tools Act I, Scene II)";

EX. B-8:    U.S. Copyright Registration No. VAu737-122, registered March 5, 2007. Form VA: "TOOLS # 5";

EX. B-9:    U.S. Copyright Registration No. VAu737-123, registered March 5, 2007. Form VA: "TOOLS # 2";

EX. B-10:    U.S. Copyright Registration No. VAu737-118, registered March 5, 2007. Form VA: "TOOLS # 6";

EX. B-15:    U.S. Copyright Registration No. TXu1-343-783, registered March 5, 2007. Form TX: "TOOLS Musical Fantasy Adventure – Entertainment Concept".

Plaintiffs own all right, title and interest in and to these copyrighted works.

18.    Plaintiffs next also engaged the services of Defendant SOUNDELUX (through its offices in Orlando, FL) to coproduce a live show production of the TOOLS literary work called "TOOLS Musical Fantasy and Adventure Show". In this connection, Plaintiffs provided to SOUNDELUX all of the ANIMAX work. Also, in this connection, Defendant SOUNDELUX worked for hire with Plaintiffs, and at significant expense to Plaintiffs, to develop a marketing package containing a presentation of the Plaintiffs' TOOLS show production ideas, particularly directed to the corporate entertainment industry in Las Vegas, Nevada (the SOUNDELUX marketing package). On March 5, 2007, the Plaintiffs received a certificate of registration for this copyrighted work from the U.S. Copyright Office. A true and correct copy of the copyright certificate of registration as well as a true and correct copy of the underlying copyrighted work is attached as the following Exhibit:

EX. B-2:       U.S. Copyright Registration No. TXu1-343-050, registered March 5, 2007.
Form TX:  "TOOLS Musical Fantasy Adventure Conceptual Design
Presentation Presented by Soundelux Showorks March 16, 1998".

This marketing package was based on a conceptual overview, story boards, and a master show rendering of the TOOLS literary work created by Plaintiffs and SOUNDELUX as work made for hire (collectively, the SOUNDELUX work).  Plaintiffs own all right title and interest in and to the SOUNDELUX work, including copyright.  On information and belief, copies of the master show rendering were displayed in SOUNDELUX's offices world-wide.  Additionally, SOUNDELUX displayed the master show rendering on its webpage.

19.    In early 1998, using the SOUNDELUX work, Plaintiffs successfully approached Marnell Corrao Corp. in Las Vegas and presented the SOUNDELUX work and obtained a letter of intent from Marnell Corrao Corp. to enter a multi-million dollar lease of space in a resort hotel on the Las Vegas Strip to build a theater that would feature the TOOLS Musical Fantasy and Adventure Show as its main attraction.

20.    Plaintiffs next obtained independent market research information, at significant expense, recommending that Plaintiffs create an audio/visual marketing presentation of the TOOLS™ production ideas to aid their further marketing and investment capital efforts.  This led Plaintiffs to create, with additional assistance from ANIMAX, and again at significant expense, a marketing graphic video and audio presentation of the TOOLS™ Musical Fantasy and Adventure show.  The preparation of this infomercial included review of the SOUNDELUX work, creation of a multitude of color art story boards, a soundtrack, a voice over narration of the story used in conjunction with the story boards, and a summary overview of how the TOOLS Musical Fantasy and Adventure show would be created in a multimedia show production to be shown in, for example, a theater in a Las Vegas Strip resort hotel.  A

final production version of the infomercial was created in about early 1998, and titled "TOOLS

Video Infomercial presented by Tools Theater Investment Corp." (hereinafter, the TOOLS

Infomercial) (also considered part of the ANIMAX work). On March 5, 2007, Plaintiff HANS

ROSENFELD received a U.S. Copyright Registration for the TOOLS Infomercial from the

U.S. Copyright Office   A true and correct copy of this copyright certificate of registration as

well as a true and correct copy of the underlying copyrighted work is attached as the following

Exhibit:

EX. B-13:     U.S. Copyright Registration No. PA 1-367-502, registered March 5, 2007.
              Form PA – Work Entitled:  "TOOLS Video Infomercial Presented by Tools
              Theatre Investment Corp.".

Plaintiffs own all right title and interest in and to the TOOLS Infomercial, and all the artwork

and other work which is collectively 15 different registered copyrights and is collectively

called TOOLS works.

21.    Plaintiffs provided copies of the TOOLS Infomercial to Defendant SOUNDELUX,

Marnell Corrao Corp., and other potential investors based on the then present intent to produce

a show production at the lease location from Marnell Corrao Corp.  As such, Plaintiffs

continued pursuit of financial investment and had begun to line up significant investors to move

forward, but needed to continue raising more money.

22.    As part of Plaintiffs' overall marketing and promotional efforts, in 1999, Plaintiffs,

with the assistance of ANIMAX, and at great expense and time, created a life-sized, wireless,

remote-controlled working animatronics robot, called "OPTIBOT™".  Plaintiffs own all right,

title and interest in and to the OPTIBOT™ robot and trademark.  Since about 1999, Plaintiffs

have been promoting the TOOLS™ Musical Fantasy and Adventure Show internationally, in

part, by displaying the OPTIBOT™ robot with potential investors, resort hotels, public events,

and celebrities.

23.     The negotiations with Marnell Corrao Corp. continued for about 2 years until Plaintiffs were advised that this particular location would not be available because of a dispute between Marnell Corrao Corp. and another interest holder (the owners of the Aladdin Hotel) in that property location which prevented Marnell Corrao Corp from developing the property as it had planned.  As part of the resolution of the dispute, on information and belief, Marnell Corrao Corp. obtained a multi-million dollar settlement from the owners of Aladdin Hotel, and used as supporting evidence, in part, the proposed plans it had for developing the TOOLS Musical Fantasy and Adventure Show.

24.     At about this time, Plaintiffs moved to Las Vegas and then continued their efforts to secure a resort hotel location on the Las Vegas Strip to feature their TOOLS Musical Fantasy and Adventure Show.  As a result of Plaintiffs' time and efforts, interest was shown by many resort hotels and ultimately, in mid 2000, The Showcase on the Las Vegas Strip, expressed an interest in entering a multi-million dollar lease with Plaintiffs to build a theater large enough to accommodate the TOOLS Musical Fantasy and Adventure Show, and provided a letter of intent with a request that Plaintiffs obtain additional capital investment.  Similarly, Plaintiffs obtained interest from Metroplex LLC to develop a theater large enough to accommodate the TOOLS Musical Fantasy and Adventure Show.  At about this time, Defendant SOUNDELUX closed its Orlando, Florida offices.  Plaintiffs were advised by SOUNDELUX that all of the TOOLS work in the possession of SOUNDELUX was transferred to its headquarters offices in Hollywood, California.

25.     During the time in which Plaintiffs were seeking additional capital investment, 9/11 occurred and placed many of the Las Vegas resort hotel developments on hold for a time.

26.    In 2002, Plaintiffs renewed their marketing and promotional efforts to find a resort

hotel in the design phase so that the theater design aspects of the TOOLS Musical Fantasy and

Adventure Show could be incorporated.  Plaintiffs obtained interest from World Port Resorts,

New World, LLC and again were requested to bring substantial investment capital to move this

project forward.

27.    In 2003, as part of their overall fundraising efforts, Plaintiffs built a portable

theater structure in El Paso, Texas, capable of seating 120 guests for production of a version of

the TOOLS work.  In this connection, Plaintiffs invested money to create a new business plan

designed to provide success to this exemplary planned production of the TOOLS work, with

the goal of taking the company public through an IPO, and with the revenues generated, invest

in the ultimate goal of producing a production show version of the TOOLS Musical Fantasy

and Adventure Show in a resort hotel on the Las Vegas Strip.

28.    Next came the ROBOTS movie and all fundraising has died on the vine, because

the investors believe that this TOOLS concept was not Hans, but instead belonged to ROBOTS

(reverse confusion).

29.    Plaintiff HANS ROSENFELD despite the set backs continued in his life long dream to

market and develop TOOLS.

30.    In conjunction with the goods, services and developments noted above, the

Plaintiffs have adopted and used in commerce, at all times material to this Complaint, a

copyrighted, stylized logo of the mark TOOLS employing lettering fashioned out of bolts,

fasteners, screws, springs, tools, cogs, gears or other objects:



Plaintiffs have used the TOOLS logo in commerce in connection with entertainment services, namely, providing the rental of a robot for purposes of general entertainment, fund raising, and charitable purposes such as paying visits to terminally ill children since as early as 1999. Additionally, Plaintiffs have used the TOOLS logo in commerce for various articles of clothing, such as t-shirts and caps as well as for embroidered patches since as early as 2000. Plaintiffs have continuously used the TOOLS logo in commerce for many years in connection with these goods and services over a vast geographical territory. Plaintiffs have spent considerable sums of money marketing and publicizing the TOOLS name and concept which includes promotion of the TOOLS logo.  The TOOLS trademarks have been promoted in the entertainment industry as well as to others interested in robots-oriented entertainment. Plaintiffs unique TOOLS logo has acquired and enjoyed distinctiveness and fame prior to the time in which Defendants first began using the infringing ROBOTS logo. In fact, during the promotion and development of the works the Plaintiffs were advised to change the name of TOOLS to ROBOTS. In the developmental scheme, the name ROBOTS was prominent and considered.  Ultimately, the decision was made for Plaintiffs when the movie ROBOTS premiered in 2005. On March 5, 2007, Plaintiffs received copyright registrations for these TOOLS logos from the U.S. Copyright Office.  True and correct copies of these copyright certificates of registration as well as true and correct copies of the underlying copyrighted works are attached as the following Exhibits:

EX. B-11:    U.S. Copyright Registration No. VA 1-404-605, registered March 5, 2007. Form VA:  "TOOLS logo (gold and green on purple)"; and

EX. B-12:    U.S. Copyright Registration No. VA 1-404-604, registered March 5, 2007. Form VA:  "TOOLS logo (gold on black)".

 Plaintiffs own all right, title and interest in and to these copyrighted works.

31.    In March 2005, the TWENTIETH CENTURY Defendants released to cinemas

throughout the U.S. and abroad, an animated movie entitled ROBOTS.

32.    The ROBOTS movie employs a stylized logo of the mark ROBOTS

employing lettering fashioned out of bolts, fasteners, screws, springs, tools, cogs, gears or

other objects:



("the ROBOTS logo").

33.    Subsequently, the TWENTIETH CENTURY Defendants caused the movie

ROBOTS to be marketed for sale and/or rental in a DVD format throughout the world,

including locations within the jurisdiction of this Court.  Such marketing and sale occurred in,

e.g., retail outlets and over the internet.  The internet locations included locations controlled

by the TWENTIETH CENTURY Defendants and internet locations controlled by others.

34.    The marketing campaign for the movie ROBOTS has continued on cable television

networks and local venues such as in museums. The movie Robots is available for sale to the

public in many retail outlets and stores.

35.    The TWENTIETH CENTURY Defendants have also engaged in mass

merchandising of other products being sold under the ROBOTS logo, and have sought and obtained numerous U.S. Trademarks for this logo for a wide variety of goods, including articles of clothing, puppets, robot-related toys and various entertainment-related products. For example, Defendant Twentieth Century has obtained the following U.S. Trademark Registrations to the ROBOTS logo:

Reg. No. 3058225 for t-shirts, shirts, underwear, pajamas, nightshirts, shoes, Halloween and masquerade costumes and masks claiming a date of first use in commerce of March 31, 2005;

Reg. No. 3248105 for various games, toys, puppets, toy figurines, action figures, and the like, claiming a date of first use in commerce of February 28, 2005;

Reg. No. 3254098 for Computer and video game software; computer and video game cartridges, discs, CD-ROMS and DVDs; computer and video game cartridges, discs, CD-ROMS and DVDs adapted for use with television receivers, claiming a date of first use in commerce of February 22, 2005;

Reg. No. 3370164 for children's books, story books, baby books, children's activity books, game books, motion picture film novelizations claiming a date of first use in commerce of March 31, 2005;

Reg. No. 3,059,562 for lunch boxes, paper plates, paper cups, claiming a date of first use in commerce of March 31, 2005;

Reg. No. 3,059,563 for bed skirts, bedspreads and blankets, claiming a date of first use in commerce of March 31, 2005; and

Reg. No. 3,066,730 for candy, candy cake decorations, candy and candy dispensing container sold as a unit, claiming a date of first use in commerce of March

31, 2005.

True and correct copies of these ROBOTS Certificates of Registration are attached as Exhibit "C" hereto.  Defendant Twentieth Century was required by the U.S. Patent & Trademark Office to disclaim any exclusive rights to use the word "ROBOTS" apart from the stylized manner in which the mark was shown.  As such, the potentially trademarkable aspect of Defendants' ROBOTS trademark is not in the use of the generic term "ROBOTS" but instead is in the use of the stylized lettering fashioned out of bolts, fasteners, screws, springs, tools, cogs, gears or other objects.  Thus, when comparing the lettering style used in Defendants' ROBOTS mark, it in fact conveys the impression of "tools" as well as copying the very distinctive lettering style employed by Plaintiffs in the Plaintiffs' TOOLS logo.  Defendant Twentieth Century represented to the U.S. Patent & Trademark Office, in the sworn Declarations accompanying each of the trademark applications leading to these registrations, that  "he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."  On information and belief, Defendant Twentieth Century knew of Plaintiff's TOOLS logo at the time each of these trademark applications was filed and probably knew that the development of TOOLS logo was in the process of changing to ROBOTS with the same type of lettering.

36.    There are too many substantial or striking similarities between the TOOLS work and ROBOTS movie to be left to chance -- from the logo to the setting, plot line, and down to the very characters used, there are such substantial and striking similarities that there are no

coincidental similarities. Further, in the promotional material in ROBOTS, the director Chris Wedge writes, "I wish I could say we just dug in and cracked it wide open, but the truth is that neither Bill (Bill Joyce, producer) nor I came up with half the stuff in this movie. You'll see inspirational sketches and anecdotes about direction given, but ultimately the film was made by our crew. Over two hundred people, many more than are mentioned in this book, joined to make ROBOTS a reality. They persisted through new ideas, failed ideas, and many, many changes. At they poured in their talent, the direction got clearer and designs were refined and expanded. Discoveries were made, adopted as changes, and as Big Weld says, 'one idea led to another' until in most cases utterly thrilling original invention hit the screen." On information and belief Plaintiffs allege someone or many of these two hundred people appropriated the Plaintiffs ideas and concepts. The Defendants and some of the army of contributors had access to Plaintiffs' TOOLS work effort and ideas. No efforts were made to ensure theses ideas were in fact, not appropriated.

37.     Plaintiffs allege that the characters, storyline, music and plot were knowingly and intentionally appropriated by the Defendants from Plaintiffs' TOOLS Work and incorporated into their production of ROBOTS.  Defendants knowingly infringed on Plaintiffs' copyright by producing and placing into the marketplace the movie entitled ROBOTS.  By producing, publishing, offering for sale, and selling the movie ROBOTS, Defendants have infringed, and are infringing on Plaintiffs' copyright within this judicial district and elsewhere throughout the United States, Canada, Mexico and the world without consent of the Plaintiffs and in complete disregard of Plaintiffs' rights.

38.     Defendants have wrongfully produced, manufactured, distributed for sale and sold movies containing the Plaintiffs' play, ideas, plot, characters and music and has done so

without first obtaining a license of any nature from Plaintiffs.  Defendants have ignored and

continue to ignore Plaintiffs' rights and entitlement to profits and royalties and have instead

intentionally and knowingly honored their own illegal claim of entitlement to revenues related

in whole or in part to the movie ROBOTS.

39.    Plaintiffs have notified all Defendants by virtue of this complaint that they have

infringed and are infringing, on the copyright of the Plaintiffs. Even though the Defendants

received notice, Defendants have continued, and still continue, to infringe on Plaintiffs'

copyright.

40.    The unauthorized and infringing use by the Defendants of the musical animation

play TOOLS will, unless enjoined, cause irreparable harm, damage, and injury to Plaintiffs in

that Plaintiffs' reputation has been damaged as a result of the failure of Defendants to properly

credit the Plaintiffs as author and owner of the musical animation play TOOLS.

41.    Plaintiffs have been and will continue to be irreparably harmed, damaged, and

injured as a result of the Defendants' infringements and threatened infringements of Plaintiffs'

copyright.  In addition, Defendants have unlawfully and wrongfully derived and will continue

to derive income and profits from their acts.

42.    Since the first date of publication and showing of the movie ROBOTS, Plaintiffs have

complied with all the pertinent provisions of the copyright act and all other laws governing

copyright with respect to the musical animated play TOOLS.  Great and irreparable harm,

damage and injury will result to Plaintiffs unless all wrongful and illegal acts of Defendants are

immediately enjoined.

43.    Defendants, by their unauthorized appropriation and use of Plaintiffs' original ideas

and product have engaged and are engaging in acts of wrongful deception of the purchasing

public, wrongful deprivation of Plaintiffs' good name and reputation, and wrongful deprivation

of Plaintiffs' rights to public recognition and credit as author, composer, and owner of

TOOLS.

44.     Plaintiffs' action concerning Defendant's unfair competition is related to Plaintiffs'

substantial copyright infringement action and trademark infringement action since these actions

are based on the same operative facts.

45.     After March, 2005, and continuing thereafter Defendants have been publishing,

marketing, playing, and selling the movie ROBOTS and as a result of that conduct have

engaged in unfair trade practices and unfair competition against Plaintiffs to Plaintiffs'

irreparable damage.

46.     Defendants falsely and illegally stated in their copyright registration that they

jointly authored the words, characters, story and artwork to ROBOTS. Defendants fraudulently

claimed authorization when they knew or should have known the true author was Plaintiff

HANS ROSENFELD.

## LANHAN TRADEMARK ACT

47.     Paragraphs 1-46 are incorporated herein by reference.

48.     This is an action under the Lanham Trademark Act of 1946 (15 U.S.C. § 1051, *et*

*seq.*), particularly, 15 U.S.C. §§ 1116, 1117, 1125(a), 1125( c), and 1125(d), for false

designation of origin, false or misleading descriptions and representations of fact and dilution

based on Defendants' wrongful appropriation and use of Plaintiffs' Trademarks and the bad

faith, illegal registration, trafficking in, and use of a domain name that incorporates Plaintiffs'

trademarks.

49.     As set out above, Defendants, in connection with their offering, attempting to offer,

producing and selling of the movie ROBOTS with Plaintiffs' TOOLS Trademarks in commerce, including through their website, have caused confusion, and will continue to be likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiffs' TOOLS works and logo. Plaintiffs allege that the Defendants' mark is confusingly similar to the TOOLS logo in which Plaintiffs have acquired superior common law trademark rights.

50.     Similarly, Defendants use of unauthorized use of Plaintiffs' TOOLS works constitutes commercial advertising or promotion that misrepresents the nature, characteristics, qualities or geographic origin of their or another person's goods, services, or commercial activities.

Many years prior to the Defendants' first use of the ROBOTS logo in commerce, Plaintiffs had previously established superior rights in their TOOLS trademark by using the same in commerce to promote the TOOLS endeavor with hats, t-shirts and embroidered patches bearing the TOOLS logo. These promotional products were distributed and put into commerce at various locations around the country to include the States of Texas, Nevada, Florida and California in order to help sell and promote TOOLS to investors and others.

Further Plaintiffs even had a mechanical robot built for the purposes of general entertainment, promotion, fund raising and charitable purposes (e.g., paying visits to the El Paso City Counsel and visits to terminally ill children) that Plaintiffs provided in commerce under the TOOLS logo.

Plaintiffs' continued use of the stylized logo TOOLS as set out above began well in advance of the Defendants' ROBOTS logo which first appeared in February and March 2005. Defendants have since March 2005, used a different word (the generic word ROBOTS) but the same idea and concept in their commercial promotions of the movie ROBOTS. Plaintiffs'

obvious good idea was made famous enough to be appropriated and then changed.  However, in no way does it make the initial mark less valuable. In fact, the only thing the ROBOTS mark does is dilute the quality of the TOOLS mark since it is now confused with the ROBOTS mark, and has diminished the TOOLS mark so as to be lesser, over shadowed, and virtually unidentifiable in contrast to the ROBOTS mark.

51.     In addition, Defendants, in connection with their offering of the movie ROBOTS are misrepresenting the origin, sponsorship or approval of their goods, services and commercial activities as being associated or affiliated with Plaintiff HANS ROSENFELD.

52.     Plaintiffs respectfully seek injunctive relief from this Court to prevent Defendants from further use of the TOOLS Trademarks in connection with the movie described herein, or from using any name, mark or trade dress confusingly similar to that of Plaintiffs in connection with such goods, services and commercial activities.

53.     Plaintiffs also seek from Defendants their profits, Plaintiffs' damages, and the costs of this action.  Due to the egregious nature of Defendants' actions in blatantly creating a business based on misappropriating others' creative works and intellectual property, Defendants should be assessed three (3) times the damages awarded, plus the reasonable attorney's fees of Plaintiffs as provided for in 15 U.S.C. § 1117.

## COPYRIGHT

54.     Paragraphs 1-53 are incorporated herein by reference.

55.     This is an action under The Copyright Act of 1976 (17 U.S.C. § 101, *et seq.*) for Defendants' infringement of the copyright owned by Plaintiffs' TOOLS Original Works which has been registered and copyrighted by Plaintiffs. See attached Exhibit B1-15.

Plaintiffs' TOOLS original works are registered, copyrighted and owned by Plaintiffs.

See attached Exhibits A and B-1 to B-15.

56.     By their actions set out above, Defendants have infringed and will continue to infringe Plaintiffs' TOOLS Original Works by producing, distributing, and placing upon the market the ROBOTS movie, brochures, and promotional materials which are infringements of Plaintiffs' copyrighted TOOLS Original Works.  Apart from the marketing materials that are part of Plaintiffs TOOLS Original Works, Defendants have also employed in virtually all printed and web-based media, copies of the Plaintiffs' copyrighted TOOLS logo (also a part of the TOOLS Original Works).

Defendants' work ROBOTS have the following substantial/striking similarities to Plaintiffs' copyrighted materials as set out in Exhibits A and B-1 to B-15. The similarities are either directly obvious or easily seen to be an original idea taken to a different level. These include:

A.     The Scene - both contain:

1.  Industrial factory settings.

2.  Chop shops where the battle scenes eventually take place.

3.  Extensive use of conveyor belts.

4.  Arches in the buildings of the modern city architecture

5.  Similar ultra modern office settings for the executives.

6.  Prominent clock towers.

7.  Monorails for transportation.

8.  Big ballroom scenes.

B.     The theme and plot →both contain:

1.  Good v. evil with good eventually overcoming evil but with great difficulty.

2.  Protagonists following their dreams.

3.  Holocaustic efforts by the evil leaders with replacement of humanoids and mondroids.

C.      Background - both use:

1.  Ethnic music.

2.  Theatrical style dance.

D.      Heroes - Both are:

1.  Young males with blonde girlfriends (Goldy and Cappy).

2.  Inventors.

3.  Following their dreams for a better life with powerful enemies against them.

4.  Fired by the evil boss.

E.      Villains- both have:

1.  Antagonist with evil empire plans.

2.  Diabolical laughter.

3.  Entourages of yes men.

4.  Offices which are essentially thrones.

F.      Cast of characters -both have:

1.  Characters that look the same.

2.  Multi racial and ethnic characters.

3.  A female admirer for the heroes.

4.  Entourage.

5.  New and better models ready which the villains hope to use as replacements for the characters.

57.     Plaintiffs are entitled to an injunction restraining Defendants, their officers,

agents or employees, and all persons acting in concert with them, from engaging in any further

acts in violation of the copyright laws.

58.     Plaintiffs are further entitled to recover from Defendants the damages, including

attorney's fees, it has sustained and will sustain, and any gains, profits and advantages obtained

by Defendants as a result of Defendants' acts of infringement alleged above.  At present, the

amount of such damages, gains, profits and advantages cannot be fully ascertained by

Plaintiffs.

## DECLARATORY JUDGMENT

59.     Paragraphs 1-58 are incorporated herein by reference.

60.     Based on Defendants' threats and assertions set out above, an actual case or

controversy exists regarding the ownership and rights associated with the Plaintiffs' TOOLS

Trademarks (and their associated goodwill), the TOOLS Original Works, and the TOOLS

Intellectual Property worldwide.  As such, per the Declaratory Judgments Act, 28 U.S.C. §

2201 *et seq.*, Plaintiffs seek a declaration that Plaintiffs own all right, title and interest in and

to the TOOLS Trademarks (and their associated goodwill), the TOOLS Original Works, and

the TOOLS Intellectual Property worldwide and that Defendants have no rights in such marks,

works or intellectual property whatsoever and cannot use their Robots variation.

## TRADEMARK COMMON LAW INFRINGEMENT

61.     Paragraphs 1-60 are incorporated herein by reference.

62.     Plaintiffs by adoption and use in this District and elsewhere, have acquired

common law rights in its TOOLS Trademarks.  Defendants have unlawfully appropriated and

are attempting to use in this District and elsewhere the TOOLS Trademarks now under the name Robots belonging to Plaintiffs without right or permission from Plaintiffs.

63.     Defendants have appropriated for their own use with similar goods, services and commercial activities, virtually an identical trademark to that of Plaintiffs' TOOLS Trademarks.  Such illegal use has already caused confusion, and will continue to be likely to cause confusion.  Plaintiffs' TOOLS Trademarks are strong, arbitrary marks and as such as entitled to a significant protection.  Defendants are contacting the same customers as those of Plaintiffs, and seek to offer, sell and distribute their infringing goods, services movie and commercial activities within the same stream of commerce used by Plaintiffs.  Defendants have not used one shred of originality in their advertising or business activities, but instead have relied on the wholesale copying of all aspects of Plaintiffs' business.  Defendants actions have been willful, wanton and carried out with an express intent to injure the business of Plaintiffs.

64.     Plaintiffs request an order of this Court preliminarily and permanently enjoining Defendants from continuing to use the TOOLS Trademarks, now Robots or confusingly similar names, marks or trade dress, for marketing, manufacturing and/or selling products of the type described herein.

65.     Plaintiffs also seeks an award of its actual damages resulting from Defendants' illegal conduct.  Due to the brazen, willful and wanton nature of Defendants' conduct, Plaintiffs also seek an award of enhanced, punitive damages as well as attorneys' fees for the common law infringement.

## MISAPPORIATION OF TRADE SECRETS AND CONDIENTIALITY INFORMATION

66.     Paragraphs 1-65 are incorporated by reference.

67.     As set out above, Plaintiffs have at all material times to this Complaint, maintained

trade secret and confidential information regarding, the TOOLS work.  This information

provides Plaintiffs with a competitive advantage over their competitors.

68.     Defendant SOUNDELUX learned of these trade secrets and confidential information

directly from Plaintiffs underwritten obligations of confidentiality set out in their Agreement.

On information and belief, Defendant SOUNDELUX has shared such trade secrets and

confidential information with other of the Defendants.

69.     Subsequent to the termination of the their Agreement, Defendants have used and

disclosed these trade secrets and confidential information without authorization by Plaintiffs.

70.     Defendants' unlawful and unauthorized use and disclosure of Plaintiffs' trade secrets

and confidential information has been willful and deliberate.

71.     As a result of Defendants' unlawful and unauthorized use and disclosure of Plaintiffs'

trade secrets and confidential information, Plaintiffs have suffered actual damages in an amount

to be determined at trial in excess of the minimum jurisdictional limits of this Court.

Additionally, as a result of the willful and deliberate nature of Defendants' unlawful activities,

Plaintiffs are entitled to punitive and exemplary damages.

72.     Defendants' unlawful theft and misappropriation of Plaintiffs' trade secrets and

confidential information has caused irreparable harm to Plaintiffs for which there is no

adequate remedy at law, and will continue to cause irreparable harm to Plaintiffs unless

Defendants are preliminarily and permanently enjoined by this Court; thus, Plaintiffs seek a

preliminary and permanent injunction against Defendants et al.

## UNLAWFUL COMPETITION

73.     Paragraphs 1-72 are incorporated by reference.

74.     As set out above, Defendants' use of the Plaintiffs' TOOLS Trademarks in connection

with its business activities constitutes an unlawful appropriation of Plaintiffs' TOOLS exclusive rights in and to its TOOLS Trademarks and such unauthorized use has caused and will continue to cause damage and irreparable injury to Plaintiffs.

75.     Defendants' use of Plaintiffs' TOOLS Trademarks in connection with their business activities has and will damage Plaintiffs' business reputation by leading the trade and public to believe that the movies offered by Defendants are approved or sponsored in this District and elsewhere by Plaintiffs.  Such unauthorized use of Plaintiffs' TOOLS Trademarks or variants thereof will continue to cause injury to Plaintiffs' business reputation and dilute the distinctiveness of its TOOLS Trademarks, all of which constitute irreparable harm to Plaintiffs.

76.     Unless enjoined by this Court, Defendants will continue to unfairly compete with Plaintiffs by unfairly trading upon Plaintiffs' valuable goodwill and reputation in its TOOLS Trademarks.  Defendants are also palming off the movie Robots as it original idea and such activity should also be enjoined.

77.     The actions of Defendants complained of herein constitute unfair competition and have resulted in damages to Plaintiffs in an amount exceeding the minimum jurisdictional limits of this Court.  Additionally, as a result of the willful and deliberate nature of Defendants' unlawful activities, Plaintiffs are entitled to punitive and exemplary damages.

## **TEXAS LIABILITY ACT**

78.     Paragraphs 1-77 are incorporated by reference.

79.     Defendants unlawfully appropriated the property of another, namely, the Plaintiffs by appropriating the Plaintiffs' work or communicating same to a third party and violated Texas law.  As such, per Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001 — .005 (Vernon 1997 & Supp. 2004-2005), Plaintiffs are entitled to damages, injunctive relief and an award of their

reasonable attorney's fees from the Defendants for the statutory violations.

## CONVERSION

80.   Paragraphs 1- 79 are incorporated by reference.

81   Defendants unlawfully exercised dominion and control over Plaintiff HANS

ROSENFELD's original work, Intellectual Property and trade secrets, in denial of, or

inconsistent with, the Plaintiffs' rights in that property.  As such, Plaintiff HANS

ROSENFELD is entitled to damages and injunctive relief and an award of their attorney's fees.

## TORTIOUS INFRINGEMENT OF CONTRACTS AND BUSINESS RELATIONSHIPS

82.   Paragraphs 1-81 are incorporated by reference.

83.   As set out above, Plaintiff HANS ROSENFELD has spent considerable funds in

developing his theatrical work and marketing it for production. Defendants are presently

engaged in direct interference with the business and contractual relationship between Plaintiff

HANS ROSENFELD and his investors.

## FRAUD

84.   Paragraphs 1- 83 are incorporated by reference.

85.   Based on the foregoing, Defendants have engaged in conduct which constitutes

fraud. Defendants have made material representations to the public in general, that Defendants

are the rightful owners of the movie and its rights. These representations are false, and when

these representations were made by Defendants, the Defendants knew the representations were

false or made recklessly without any knowledge of the truth and as a positive assertion.

Defendants made these material representations of fact with the express intent that those

hearing or reading such representations, be it Plaintiffs' business relations or the general

public, or the U.S. Patent & Trademark Office, should act upon the representations.  As a

direct and proximate result of such material misrepresentations of fact, Defendants have caused

injury.  Plaintiff HANS ROSENFELD has and will continue to suffer injury as a result of such

willfully false representations of material fact.

86.     The actions of Defendants complained of herein constitute fraud and have resulted in

damages to Plaintiff HANS ROSENFELD in an amount exceeding the minimum jurisdictional

limits of this Court.  Additionally, as a result of the willful and deliberate nature of

Defendants' unlawful activities, Plaintiffs are entitled to punitive and exemplary damages and

attorneys' fees.

## COMMON LAW CIVIL CONSPIRACY

87.     Paragraphs 1- 86 are incorporated by reference.

88.     This count arises under the common law of civil conspiracy.

89.     As alleged herein, at least two persons, Defendants together and also in combination

with their Defendant companies, have acted in concert to carry out the tortuous, unlawful,

overt acts complained of herein.  Defendants have had a meeting of their minds as to the

carrying out of the courses of action complained of herein.  As a proximate result of the

Defendants' conspiratorial actions, the Plaintiffs have been damaged.

## JURY DEMAND

In accordance with Rule 38(b), Fed. R. Civ. P., Plaintiff HANS ROSENFELD hereby

demands a trial by jury for all issues so triable in this matter.

## PRAYER

Wherefore, Plaintiffs respectfully request that this Honorable Court enter

judgment against Defendants, jointly and severally, as follows:

A.      That Defendants, their affiliates, subsidiaries, parent companies, officers,

agents, servants, employees, trainees, representatives and all persons in active concert or participation with any of Defendants, and each of them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

a.     Using, as a service mark, trademark, trade name, trade dress, or domain name, logo, any of Plaintiffs' TOOLS Trademarks, or any other name, mark, or trade dress confusingly similar to Plaintiffs' TOOLS Trademarks, such as Robots alone or in combination with other words, names, styles, titles, marks or trade dress in connection with the advertising, marketing, manufacturing or offering of any movie or production.

b.     Holding themselves out as the owner of, or a distributor or agent or person authorized to use, the TOOLS Trademarks, TOOLS Original Works, TOOLS Trademarked Products; or TOOLS Intellectual Property;

c.     Performing any actions or using any words, names, styles, designs, trade dress, titles or marks, which are likely to cause confusion, to cause mistake or to deceive; or to otherwise mislead the trade or the public into believing that Plaintiffs and Defendants are one and the same or are in some way connected; of that Defendants are in some manner affiliated or associated with or under the supervision or control of Plaintiffs; or that the products and services of Defendants originate with Plaintiffs or are produced, marketed or offered with the approval, consent or authorization, or under the supervision of Plaintiffs; or are likely in any way to lead the trade or the public to associate Defendants with Plaintiffs or to associate Plaintiffs with Defendants.

d.     Using any words, names, styles, designs, trade dress, titles or marks which

create a likelihood of injury to the business reputation of Plaintiffs or a likelihood of misappropriation or dilution of Plaintiffs' name, mark or trade dress and the goodwill associated therewith;

e.      Using any practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiffs' business and the goodwill appertaining thereto;

f.      Infringing Plaintiffs' copyrights in its TOOLS Original Works or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from Plaintiffs' TOOLS Original Works or to participate or assist in any such activity;

g.      Using or disclosing Plaintiffs' trade secrets and confidential information;

h.      Seeking registration of the trademark TOOLS, the TOOLS logo, or any combination thereof in the United States Patent & Trademark Office.

B.      That Defendants be required to pay to Plaintiffs compensatory damages for the injuries sustained by Plaintiffs in consequence of the acts herein complained of and that such damages be trebled because of the willful acts described herein in disregard of Plaintiffs known rights in its TOOLS Trademarks, TOOLS Trademarked Products, TOOLS Original Works and TOOLS Intellectual Property;

C.      That Defendants be required to account for and pay over to Plaintiffs all gains, profits and advantages derived by them from the activities herein complained of;

D.      That all gains, profits and advantages derived by Defendants from the acts complained of herein be deemed to be held in constructive trust for the benefit of Plaintiffs;

E.      That judgment be entered for Plaintiffs and against Defendants for statutory

damages based on Defendants' acts of infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

F.     That Defendants be required to deliver up for destruction all stationery, business forms, signs, cds, dvds, products, advertisements, brochures, promotional materials, other written materials, furnishings, designs and order forms which bear the infringing trade dress or any name, mark or trade dress confusingly similar to Plaintiffs name, mark and trade dress, together with all plates, molds, matrices, patterns, templates, paints and other means and materials for making or reproducing same;

G.     That Defendants be required to deliver up for destruction all information relating to the business or products of Plaintiffs or relating to the infringing TOOLS Trademarked Products, including, all notes, reports, product samples, product inventory, application equipment, and the like;

H.     That Defendants be required to place a prominent advertisement in local news media, including in the Territory, in multiple languages, including English, Arabic, French and Spanish clearly identifying and affirmatively representing that Defendants have no rights, whatsoever, anywhere in the world, to the TOOLS Trademarks, TOOLS Trademarked Products, TOOLS Original Works, TOOLS Mexican copyright Registration; have no affiliation with Plaintiffs; and are not an authorized distributor of any products bearing the TOOLS Trademarks.

I.     That Defendants be required to file with the Court and to serve on Plaintiff TOOLS within thirty (30)  days after service of the Court's Order as herein prayed, a report in writing in English under oath setting forth in detail the manner and form in which Defendants have complied with the Court's Order;

J.      That Defendants be required to pay to Plaintiffs all of its litigation expenses including reasonable attorney fees and the costs of this action.

K.      That Defendants be required to pay an award of pre-judgment and post-judgment interest on all damages computed; and

L.      That Plaintiffs be granted such other and further relief as the Court may deem just and necessary.


Respectfully submitted,

By:     /s/ Walter L. Boyaki
        **WALTER L. BOYAKI**

By:     /s/ Albert W. Morris
        **ALBERT W. MORRIS**

        ATTORNEYS FOR PLAINTIFFS


## <u>CERTIFICATE OF SERVICE</u>

I, **WALTER L. BOYAKI**, do hereby certify that a true and correct copy of the foregoing instrument was forwarded to **LAURA L. PRATHER**, 919 Congress Ave., Suite 1250, Austin, Texas 78701-3656, on this 17th day of October, 2008.


  /s/ Walter L. Boyaki
**WALTER L. BOYAKI**